66 So.2d 694 (1953)
BESSETT
v.
HACKETT et al.
MAXON et al.
v.
BESSETT.
Supreme Court of Florida, Division A.
July 24, 1953.
*696 Strayhorn & Strayhorn, Ft. Myers, for Raymond Bessett, appellant and appellee.
Henderson, Franklin, Starnes & Holt, Ft. Myers, for Warren Hastings Hackett and Kittie Ann Hackett, appellees and Dudley Wendle Maxon and Lulu Irene Maxon, appellants.
SEBRING, Justice.
Dudley Wendle Maxon and Lulu Irene Maxon, his wife, sued Raymond Bessett to recover damages for personal injuries suffered by them as the result of a collision which occurred when the driver of an automobile owned by Bessett made a left turn across the public highway immediately in front of an automobile which Maxon was driving and in which Maxon's wife, and Warren Hastings Hackett and Kittie Ann Hackett, his wife, were riding as passengers. *697 Hackett and his wife also sued Bessett to recover damages for injuries sustained by them arising out of the same accident. The cases were consolidated for trial and tried together.
The answer filed by the defendant to the complaint in each of the suits admitted ownership of the automobile involved in the collision, denied that the driver thereof was guilty of negligence, and averred that the collision occurred as the result of the violation of certain traffic regulations by Maxon and his failure to take proper precautions for his own safety and the safety of his passengers. The answer averred, further, that the passengers in the plaintiffs' car were negligent in that they were aware of the negligent manner in which Mr. Maxon was driving at and prior to the time of the accident but nevertheless continued to ride in the car without offering any objection. Included in the answer filed in the Maxon suit was a counterclaim wherein the defendant sought to recover from Maxon for the injuries to himself and damage to his automobile resulting from the alleged negligent operation of the plaintiffs' car by Maxon.
The accident occurred in the late afternoon of February 24, 1950, as Maxon, his wife, and Mr. and Mrs. Hackett, the two other occupants of the plaintiffs' car, were proceeding along the Tamiami Trail in a westerly direction toward Naples, Florida. As they reached a point some two miles east of Naples, Maxon saw the defendant's car, which was being driven by a female companion of the defendant, approaching in the south traffic lane of the highway. When the oncoming car reached a point approximately 100 feet away, the driver thereof, without giving any signal of an intention so to do, made a left hand turn to cross the highway. This placed the defendant's car directly in the path of the Maxon vehicle. As the driver of the defendant's car first started to turn, Maxon blew his horn, slowed his speed and placed his brakes in emergency but was unable to stop his car in time to avoid a collision.
There was evidence from the plaintiffs that at and immediately prior to the accident the Maxon car was traveling approximately 55 to 60 miles an hour. Testimony given by the defendant's witnesses, who saw the Maxon car for the first time only after it was within approximately one-fourth mile of the scene of the accident, estimated that it was traveling 80 miles an hour. All the witnesses seem to be in agreement that when the driver of the Bessett car made the left turn across the highway this car was traveling only 15 or 20 miles an hour. There is also evidence that the accident occurred in a country settlement where three or four dwelling houses and a filling station were located along the highway. However, the evidence seems to be clear that the immediate area was not a business district within the meaning of section 317.01(3), Florida Statutes 1951, F.S.A.; that the State Road Department had provided no traffic control at the location; and that the state speed law of 60 miles an hour was effective.
At the conclusion of the evidence in the case, the trial judge charged that: "If from all the evidence you believe that Mr. and Mrs. Hackett and Mr. and Mrs. Maxon were sharing the expenses of their vacation in Florida, specifically their automobile expenses, even though the car belonged to Mr. Maxon and was being driven by Mr. Maxon I charge you that if you believe that the plaintiff driver, Mr. Maxon, was in even the slightest degree responsible for the accident, then you may not allow any recovery whatsoever to any of his passengers, Mrs. Maxon or Mr. and Mrs. Hackett, for in that event they would have engaged in a joint enterprise and joint adventure, and the carelessness of Mr. Maxon would be imputable to those riding with him and sharing expenses and his carelessness would be imputable to them."
Upon the evidence, which we have stated in brief, and upon the charges given by the court, the jury returned a verdict in favor of the defendant. Subsequently, the trial judge granted a motion for new trial filed by the Hacketts, because he was of the opinion that as to the Hacketts he had erred in giving the charge as to joint adventure. However, he denied a similar motion *698 made by the Maxons and entered judgment in favor of the defendant.
The Maxons have appealed from the judgment entered in favor of the defendant. The defendant Bessett has appealed from the order granting a new trial to the Hacketts. For the sake of convenience the cases have been consolidated, and the questions raised on appeal will be considered in one opinion.
The record shows that no issue as to joint adventure was raised by the pleadings. There was no evidence in the record to support such an issue even had it been raised by the pleadings. There was some testimony to the effect that the Hacketts and Maxons had driven in the Maxon car from Akron, Ohio, to Naples and that Hackett had assisted Maxon in driving. This was not sufficient to establish a joint adventure in respect to the trip from Ohio to Naples, since by the established test it must be shown that the passengers' right to control and management must be "such as practically to amount to joint or common possession thereof." Yokom v. Rodriguez, Fla., 41 So.2d 446, 448. 5 Am.Jur. p. 787.
But even assuming that it was sufficient, there is nothing in the evidence to indicate that after the parties reached their destination in Florida this relationship continued. The law is settled that instructions to the jury must be predicated upon facts in proof, and a charge on an issue as to which evidence has not been submitted will constitute error. Seaboard Airline Ry. v. Royal Palm Soap Co., 80 Fla. 800, 86 So. 835; Murden v. Miami Poultry & Egg Co., 113 Fla. 870, 152 So. 714; Postal Telegraph & Cable Co. v. Doyle, 123 Fla. 695, 167 So. 358. It is plain, therefore, that as to the Hacketts the trial judge did not commit reversible error in granting them a new trial.
As to Mrs. Maxon, the only positive evidence in respect to the ownership of the car in which she was passenger at the time of the accident, was that it belonged to her husband. Aside from the question of ownership, the only possible theory upon which it might have been presumed that a joint adventure relationship existed between Mr. and Mrs. Maxon was bottomed upon the fact that the couple were husband and wife and that the husband defrayed the expenses of their joint trip to Florida. If this be the theory it is not maintainable, because the mere relationship of husband and wife does not constitute a sufficient basis upon which to impute to the wife the negligence of the husband. Seaboard Air Line R. Co. v. Watson, 94 Fla. 571, 113 So. 716; De Salvo v. Curry, 160 Fla. 7, 33 So.2d 215.
We conclude, therefore, that the trial court erred in refusing to grant a new trial to Mrs. Maxon. Having reached this conclusion, we think there is another aspect of the case that should be given consideration.
The issues as to the right of recovery by Mrs. Maxon were submitted to the jury on the complaint filed by the plaintiffs and upon the defense, among others, "That plaintiff passenger was careless and negligent in that she observed and was fully aware of the careless and negligent driving of the plaintiff of the automobile in which she was riding but nevertheless without regard to her own safety she continued to ride with said careless driver without remonstration in any way with said driver."
In regard to this defense, the rule is that the negligence of the driver of an automobile is not in general imputable to a passenger who has no authority or control over the car or the driver. Porter v. Jacksonville Electric Co., 64 Fla. 409, 60 So. 188; Miami Coca Cola Bottling Co. v. Mahlo, Fla., 45 So.2d 119. In the absence of agency or joint enterprise, contributory negligence on the part of the driver will not ordinarily be imputed to a guest or invitee if the latter relies on the skill and judgment of the driver and does not attempt to impose his will on the driver to see that the machine is properly driven. Florida Motor Lines v. Hill, 106 Fla. 33, 137 So. 169, 143 So. 261; Seaboard Air Line R. Co. v. Watson, supra.
An exception to the general rule that a guest riding in an automobile is entitled to trust the vigilance and skill of the driver arises where the passenger knows, or by the exercise of ordinary and reasonable *699 care should know, from the circumstances of the occasion, that the driver is not exercising that degree of care in the operation of the vehicle compatible with the safety of his passenger. "In such case it becomes the duty of the guest to make some reasonable attempt through suggestion, warning, protest or other means suitable to the occasion, to control the conduct of the driver. However, before the duty to warn, protest, or take other such action suitable to the circumstances of the case, arises, it is necessary that the occupant should know or have reason to know that it is reasonably essential to his own safety to attempt to warn or to control the conduct of the driver, and there must be sufficient time and opportunity for the guest to give warning or make protest before the happening of the accident; for a guest in an automobile may know at a particular time what the driver is doing, yet have no reason to realize that it is necessary that he intervene for his own safety. See Restatement of the Law, Volume II, pp. 1282-1284, 1230, 1231, 1262; Huddy's Cyclopedia of Automobile Law, 9th Ed., pp. 257, 258, 265." Knudsen v. Hanlon  Knudsen v. Balderston, 160 Fla. 566, 36 So.2d 192, 194.
In the case at bar the testimony of the plaintiffs' witnesses is that throughout the afternoon and up until the time Maxon saw the driver of the defendant's car beginning to make the left turn across the highway, the speed of the Maxon car had never exceeded 55 to 60 miles an hour. At the moment the defendant's car began to turn left into the lane of the highway used for westbound traffic, Maxon blew his horn, decelerated his speed, and placed his brakes in emergency. According to the defendant's witnesses, who concededly did not see the Maxon car until after it was within approximately one-fourth mile of the accident, the vehicle was traveling approximately 80 miles an hour up to the point that the horn was blown and brakes were applied in an effort to avoid the collision.
If the version of the plaintiff's witnesses as to the speed the Maxon car was traveling is the correct one, there was nothing in this speed to create a presumption of negligence under our statutes. Sec. 317.22, Florida Statutes 1951, F.S.A. In the absence of such presumption, there was nothing so out of the ordinary about driving an automobile upon the open highway at the time and place at 55 or 60 miles an hour as to impose upon the passengers in the car the duty of remonstrating with the driver as to the manner in which the car was being operated. On the other hand, if the approximation by the defendant's witnesses as to the speed of the car is to be accepted, this evidence as to speed covers only the one-fourth mile of travel immediately prior to the accident; and there is not one shred of evidence that for any considerable period prior to that time Maxon had been traveling at this rate of speed. Therefore, there is nothing in the evidence from which it can be reasonably inferred that a situation was presented which called for a remonstration from the passengers in the Maxon car, or gave them time or opportunity  assuming that such remonstration was in order  to protest or object to the manner in which the car was being operated. Accordingly, we must conclude that no valid basis existed for denying recovery to the passengers in the Maxon car  unless, upon the whole evidence, it can be fairly said that the accident was occasioned by the sole negligence of Maxon.
In respect to this issue in the case there are certain salient facts that are not in conflict. The accident occurred around 6:30 o'clock in the evening. Though it was not yet dark, the plaintiffs' parking lights were burning. While there were a few houses scattered both ways along the road in the near vicinity of the filling station, the area was not a business district, as defined by section 317.01(3), Florida Statutes 1951, F.S.A. Moreover, the State Road Department had provided no traffic control at the location and the state speed law of sixty miles an hour was effective. The defendant's car was being driven along the highway in the south lane that ordinarily would have been used for east bound traffic. The plaintiffs' car was proceeding in a westerly direction in the north lane of the highway. When the cars were within 100 feet of each other, the driver of the defendant's car suddenly turned the car to the left and *700 into the plaintiffs' path of travel, without giving any signal of an intention so to do. The turn to the left was not into any intersecting roadway, but was made by the driver presumably with the intention of driving into the filling station located on the north side of the highway.
Section 317.37, Florida Statutes 1951, F.S.A., expressly provides:
"(1) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal in the manner hereinafter provided, in the event any other vehicle may be affected by such movement.
"(2) A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning."
It is plain from the evidence in the cases that this statute was violated by the driver of the defendant's car in every essential particular. For if we are to believe the testimony of the defendant's witnesses, as the jury had the right to do, that the Maxon car was traveling 80 miles an hour, we can take judicial notice of the fact that it was traveling 117.33 feet a second; if it was traveling only 60 miles an hour, as the plaintiffs' witnesses testified, then it was approaching from 100 feet away at the rate of 88 feet a second. Compare Rodi v. Florida Greyhound Lines, Fla., 62 So.2d 355. In either case, it is clear that when the driver of the defendant's car made the left turn into the path of the oncoming car being driven by Maxon she had little more than one second's time in which to clear the north lane of the highway.
In the face of facts showing such a gross and flagrant disregard by defendant's driver of the near presence of the car being driven by Maxon, which the defendant knew or should have known was approaching (Shearman & Redfield on Negligence, Rev.Ed., Vol. 1, sec. 47), there can be no valid basis for concluding that the defendant was not guilty of negligence proximately causing the collision. "By the exercise of the slightest attention to his surroundings, the driver * * * could have seen the approaching danger * * *." Loftin v. Wilson, Fla., 67 So.2d 185. Compare McDonald v. Zurich General Accident & Liability Ins. Co., La. App., 25 So.2d 923.
We hold, therefore, that as to the plaintiffs who were passengers in the car being driven by Maxon, the trial court should have granted the motion made by them at the close of all the evidence, that a verdict be directed in their favor on the issue of negligence and that the case be submitted to the jury only on the issue of the damages sustained as the result of the collision.
This leaves for disposition only the claim for damages prosecuted by Maxon. Before the case was finally submitted to the jury the trial court, at the request of the defendant, gave the following charges:
"The Court further charges you that drivers of automobiles, when driving through a community at dusk where there are houses, driveways, road intersections, lighted stores, and filling stations and other evidences of habitation which are obvious, then such motorists are on notice that they are driving a dangerous instrumentality and required to keep it under complete control. They are further on notice that the public highways through inhabited areas are not speedways, that people may be walking along the shoulders of the highway, that other vehicles may be turning into or out of the driveways, and at intersections appurtenant to the highway, and the motorists are on notice that when they ignore these things they do so at their peril.
"When driving the public highways a cautious speed is relative. If a motorist is driving on a race track, he is excused in pulling the throttle wide open to see just how fast he can make her go, but that is not the rule when driving through a populous community. In many rural communities it is now necessary to bring one's car down to the speed required in passing schools and through the cities. The very purpose of a good highway is for business and pleasure and this necessarily requires *701 careful driving, consistent with the prevailing conditions along the highway as well as the time of day. This notice of prevailing conditions is likewise required of passengers as well as drivers."
It appears to us that upon hearing these charges given, the jury might easily have arrived at the conclusion that the court had determined as a matter of fact that at the time of the accident the plaintiff Maxon was speeding recklessly through a populous community in which were situated a considerable number of houses, driveways, road intersections, lighted stores, filling stations and other obvious evidences of habitation, when, as a matter of fact, the evidence on that issue was in serious conflict. The jury's belief as to the court's view in the matter could well have been strengthened, we think, by the fact that the trial judge included in the charge the statement, "If a motorist is driving on a race track, he is excused in pulling the throttle wide open to see just how fast he can make her go, but that is not the rule when driving through a populous community;" and the further statement that, "in many rural communities it is now necessary to bring one's car down to the speed required in passing schools and through the cities."
The rule is that the court's instructions to the jury must not assume the truth of facts which are controverted, or impose upon either party a duty not shown by the evidence to exist. Southern Pine Co. v. Powell, 48 Fla. 154, 37 So. 570; Farnsworth v. Tampa Electric Co., 62 Fla. 166, 57 So. 233. When it is considered that the issue as to the negligence of the defendant was plain, and that the issue as to the alleged negligence of the plaintiff is in serious doubt, we can come to no other conclusion than that the charge was harmful to the cause of the plaintiff and should not have been given.
On the question of the alleged contributory negligence of the plaintiff Maxon, it should be noticed that it is not every act of negligence on the part of a plaintiff that will bar his recovery for injuries resulting from the negligence of another. It is only when negligent acts on the part of the plaintiff have a direct and proximate causal relation, or contribute in some appreciable degree, to the injury that recovery is precluded. Connell v. Petri, 159 Fla. 67, 30 So.2d 922; Shayne v. Saunders, 129 Fla. 355, 176 So. 495; Atlantic Coast Line R. Co. v. Weir, 63 Fla. 69, 58 So. 641, 41 L.R.A.,N.S., 307.
As to whether or not an act of negligence on the part of a plaintiff can be said to have proximately contributed to his injury arising from an accident, the rule is that a negligent act on the part of a plaintiff cannot be said to be a proximate contributing cause of the injury unless the accident could have been avoided in the absence of such act of negligence. Shearman & Redfield on Negligence, Rev.Ed., Vol. I, sec. 112, p. 270, n. 87. 38 Am.Jur., Negligence, sec. 213.
From the conclusions reached, it follows that a new trial should be granted to the plaintiff Maxon on the issues made by the pleadings, and that as to Mrs. Maxon and the plaintiffs Hackett and wife, the case should go back for new trial on the question of damages only. Sec. 59.35, Florida Statutes 1951, F.S.A. Remsberg v. Mosley, Fla., 58 So.2d 432.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.