**ANDERSON v. UNITED STATES.**

**Civ. No. 520-P.**

United States District Court,
N. D. Florida, Pensacola Division.

Jan. 8, 1954.

E. Dixie Beggs, & Yonge, Beggs & Lane, Pensacola, Fla., for plaintiff.

G. Harrold Carswell, U. S. Atty., Tallahassee, Fla., Hayford O. Enwall, Asst. U. S. Atty., Gainesville, Fla., for defendant.

DE VANE, Chief Judge.

Plaintiff brings this suit against defendant, pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., to recover damages for a tort inflicted upon him.

The case arises out of an accident that occurred on the early morning of September 28, 1952 at the intersection of Government and E Streets, Pensacola, Florida. Plaintiff was riding as a passenger in an automobile being operated by his wife, traveling north on E Street. George R. Fallenberg, a member of the Military Forces of the United States, acting within the scope of his office and employment, and in line of duty, was operating an ambulance owned by the United States, on Government Street, traveling in a westerly direction. The accident occurred, as stated above, at the intersection of Government and E Streets; the ambulance striking the Anderson car broadside, pushing it across the remainder of E Street and turning it over on its side when its wheels struck the curb. Both Mrs. Anderson and her husband, the plaintiff, were injured in the accident. None of the occupants of the ambulance were injured.

Plaintiff contends that the accident was due primarily to the negligence and carelessness of the operator of the ambulance. Defendant contends that Mrs. Anderson was guilty of negligence which was the proximate cause of the accident and that a duty rested upon plaintiff to so control and direct the operation of the automobile by his wife as to avoid the accident and that his failure to do so makes him guilty of negligence, which directly contributed to the accident.

There is some conflict in the testimony in the case, but this conflict is not of a character that renders the case dif-

ficult of decision. Government Street is a through street and traffic on that street had the right-of-way over traffic on E Street at the intersection of these two streets. E Street had a stop sign warning traffic to stop at the intersection. Further the intersection was what many of the witnesses called a "blind" intersection; that is, persons traveling on E Street could not see traffic approaching that street traveling west until the driver of the automobile had entered the intersection. This rendered the intersection of these streets dangerous for traffic on either street.

Mrs. Anderson and plaintiff testified that when they reached the intersection Mrs. Anderson brought her automobile to a stop and seeing no traffic approaching E Street from the east or west she undertook to cross Government Street. They testified further they did not see the ambulance until it was almost upon them and Mrs. Anderson had no opportunity to avoid the accident. A government witness contradicted the testimony as to whether or not Mrs. Anderson brought her automobile to a stop at the intersection. He testified Mrs. Anderson was driving at a rate of 40 to 45 miles per hour when she entered the intersection without stopping. The undisputed physical facts regarding the accident, plus other testimony offered by defendant, which will be detailed later, completely refutes this testimony of defendant's witness.

■■ Without laboring further the testimony as to Mrs. Anderson's negligence suffice it to say that the evidence clearly shows that she was guilty of negligence, and, recognizing this fact, no suit has been brought in her behalf as the result of this accident. The court, however, is thoroughly convinced that her negligence may not be imputed to her husband. The court is not satisfied that it was of such nature as to be reckless so as to alert plaintiff sufficiently to require him to attempt to control his wife in the operation of the automobile. It is well settled in Florida that the negligence of the operator of an automobile may not be imputed to a passenger. Arline v. Brown, 5 Cir., 190 F.2d 180.

The important question in this case is whether the government employee operating the ambulance was guilty of negligence sufficient to make defendant liable in the case. The driver of the ambulance testified that he was traveling at a rate of speed of 35 miles per hour, which is the permissible speed approved by government authority for the operation of its ambulances. The State law, Sec. 317.04(4), Florida Statutes, F.S.A., and the City Ordinance of Pensacola (Sec. 20.15) prohibited a speed in excess of 25 miles per hour on City streets in Pensacola, Florida. The ambulance in question had been sent to a point in Pensacola to pick up a sailor who was ill and to take him to the naval hospital. The sailor had been picked up and was in the ambulance being transported to the naval hospital at the time of the accident. The government contends that this fact created an emergency that justified the speed of 35 miles per hour. Considerable testimony was introduced as to the condition of the sailor who was being transported in the ambulance on the point of whether an emergency did, in fact, exist, but due to the nature of such testimony the court considers it entirely immaterial in passing upon the question of negligence of the defendant in this case.

There is no direct testimony contradicting the testimony of the two government employees riding in the front seat of the ambulance as to the 35 miles per hour speed of the ambulance as it approached the intersection. However, the physical facts in the case indicate that the ambulance may have been traveling at a speed in excess of 35 miles per hour as it approached E Street. That, too, however, becomes somewhat unimportant due to the other testimony in the case. The driver of the ambulance testified that he saw the headlights of the Anderson automobile reflected in the intersection when he was 150 feet to the east of the intersection. He testified further that despite this fact he made

no effort to slow down his ambulance until he saw the Anderson automobile enter the intersection and he was, at that time, only about 50 feet from the intersection. He immediately applied his brakes and the ambulance skidded approximately 50 feet before it hit the Anderson car. It still had enough force behind it to push the Anderson car fifteen or more feet sideways, across the street, against the curb and overturn it.

The ambulance operator was as well aware of the dangers of this intersection as was Mrs. Anderson and it became and was his duty to be on the alert when he saw the lights of the Anderson car reflected in the intersection when he was still 150 feet east thereof. Had the ambulance driver been operating his ambulance at the rate of speed prescribed by the State law and the City Ordinance at the time, Mrs. Anderson would have had ample time to have crossed the intersection before the ambulance got there. The driver of the ambulance was the only person involved in this accident who knew he was exceeding the speed limit and when he saw the lights of the Anderson car reflected in the intersection it immediately became his duty to be on the alert to avoid an accident. This accident occurred about 1:00 o'clock in the morning, which placed a double duty on the ambulance driver to be cautious as he approached the dangerous intersection.

 On the basis of the entire evidence in this case the court finds and holds the government employee guilty of negligence that proximately resulted in the accident.

 The question of damages is a little more difficult. Plaintiff is well along in years and his life expectancy is only about ten years more. He was seriously, but not permanently injured. He incurred $1,254.17 total expenses for hospitalization and medical care as the result of his injuries. He still is under treatment of a physician. Plaintiff and his wife operated a small business from which they earned approximately $100 per week. His wife carried on the business while he was hospitalized, although she testified that the earnings fell off about fifty per cent. He, therefore, did not suffer any great loss of earnings as the result of the accident. His injuries were painful and he still suffers as the result of them and probably will do so for some time. However, he is not incapacitated from resuming the type of employment he follows for his livelihood.

On the basis of all the evidence touching injuries suffered by plaintiff, the court is of the opinion that he is entitled to recover $6,000 for his injuries, business losses, pain and suffering, plus $1,254.17 expenses, or a total of $7,254.-17.

A judgment for this amount will be entered against the defendant in accordance with this Memorandum Decision.