83 So.2d 587 (1955)
Raphael KLEPPER, Appellant,
v.
George W. BRESLIN and Alma Conway Breslin, his wife, Appellees.
Supreme Court of Florida. En Banc.
October 19, 1955.
Rehearing Denied December 13, 1955.
Osborne, Copp & Markham, Jacksonville, for appellant.
Marks, Gray, Yates & Conroy and Francis P. Conroy, Jacksonville, for appellees.
THORNAL, Justice.
The appellant, Raphael Klepper, as plaintiff in the trial court, sued the appellees for damages resulting from the fatal injury of his four-year old son, Scott Robert Klepper, allegedly caused by the negligent operation of the automobile of the appellee, George W. Breslin, by his wife, Alma Conway Breslin. The jury rendered a verdict for the defendants and after denial of a motion for new trial, the plaintiff appeals.
*588 The parties all lived in a strictly residential area known as Ridgewood in Duval County. The defendants resided some five hundred feet or more north of the plaintiff and his family on the opposite side of the street. It was generally known that there were numerous small children living in the community. Signs warning "Children  Slow" were posted around the area. Immediately prior to the accident, Mrs. Breslin backed out of her driveway and proceeded along Peachtree Circle East in a southerly direction. There is a conflict as to the speed at which she was driving.
At a distance of four to five hundred feet from the accident Mrs. Breslin saw three small children and a dog playing in the park area on the east side of the street immediately contiguous to the paved roadway. As she approached the scene, two of the children were standing several feet off of the road. One was a little girl about five years old and the other was Robert's little brother Russell, aged two years. The little girl appeared to be holding him back from the road. Scott Robert Klepper, age four, was standing by a fence with his arm around a fence rail which was shown to be some 18 feet east of the east edge of the paved road, which was also 18 feet wide. There was no sidewalk. Mrs. Breslin had noticed the small dog running after the boy toward the fence away from the road. At this point the dog evidently turned because it ran across the road in front of the Breslin automobile. Mrs. Breslin veered to the right to miss the dog and after learning from her maid, who was sitting on the front seat by her, that she had missed the dog, she again glanced to her right, then straightened up, as she testified, "to pay attention to my driving". The maid held Mrs. Breslin's baby on her lap and there were two larger children on the back seat of her car. It appears from the record that she assumed the children were safely off the road where she had last seen them. Thereupon, she noticed the Klepper child running across the road and he seemed to stumble and fall directly in front of her automobile. She stated that the running of the dog, the veering of the car, her "straightening up" and the running of the boy all happened in a matter of "four or five seconds". The car struck the child and Mrs. Breslin stated that she did not apply the brakes of her car immediately in an effort to avoid actually passing over the little boy but without the application of her brakes her car came to a stop approximately 40 feet from the point of contact with the child. There were marks along the pavement described as "scuff marks" for a distance of approximately 40 feet back of the automobile up to the point where the child's body was found. The little boy was pronounced dead upon arrival at the hospital shortly after the accident. The deceased child's mother was in her home preparing the evening meal at the time of the tragedy. The Klepper home was almost directly across the street from the area where the children were playing by the fence mentioned above. The Kleppers had previously fenced in their back yard as a playing area for the little boy but for several months prior to the accident, his mother had permitted him to play in the front yard. The plaintiff-father knew of this practice. The mother had never known him to run across the road unattended. He had been taught safety precautions in kindergarten. She stated that she checked on him about every five minutes, glancing out of her kitchen window. She testified further that she had noticed the children in her own front yard about five minutes prior to the unfortunate occurrence.
One witness testified that she saw the Breslin car some distance prior to the accident and that in her judgment it was traveling 30 to 35 miles per hour. Mrs. Breslin testified that actually she was traveling 15 to 18 miles per hour just before the accident; that immediately prior to the contact with the child, she had stepped on her brakes to avoid the dog, and that at the time of contact she had just moved her foot from the brakes and was in the act of stepping on the accelerator to get her car under way again.
The case was tried on the defenses of a general denial and the alleged contributory negligence of the mother of the deceased *589 on the theory that she had failed to maintain adequate supervision and control over the small child. The Court among other instructions charged the jury, at the request of the defendants, on the doctrine of "sudden emergency," "unavoidable accident," "darting out," and contributory negligence by the mother as being chargeable against the plaintiff-father. The plaintiff appeals alleging that these charges constitute errors and in addition he contends that the trial judge should have directed a verdict for the plaintiff on the alleged negligence of the defendants.
By assignment of errors numbered 6, 8 and 9, the appellant-father contends that the trial judge committed reversible error by instructing the jury, at the request of the appellees, as follows:
"Where the operator of an automobile by a sudden emergency, not due to her own negligence, is placed in a position of imminent danger and has insufficient time to determine with certainty the best course to pursue, she is not held to the same accuracy of judgment as is required under ordinary circumstances, and if she pursues a course of action to avoid an accident such as a person of ordinary prudence placed in a like position might choose, she is not guilty of negligence, even though she did not adopt the wisest choice.
"If you find from the evidence that the plaintiff's decedent, Scott Robert Klepper, darted or ran suddenly onto the highway in front of the defendant's automobile, provided there was no negligence on the part of the defendant, Mrs. Breslin, such automobile was too close for her to avoid hitting him in the exercise of ordinary care, as defined in these instructions, the collision by the defendants' automobile and said Scott Robert Klepper would be an unavoidable accident, and you should find the defendants not guilty.
"Where a child is in a place of safety on a sidewalk or elsewhere and exhibits no intention to cross the street or makes any movement showing such a purpose until the car is so near that it cannot be stopped, and the child suddenly darts in front of it and is injured, the owner of the car is not chargeable with negligence because of the failure of the driver to stop the car."
It is the contention of the appellant that if a "sudden emergency" existed it resulted from the negligence of the driver of the automobile and further that the accident could not have been "unavoidable" for the reason that in the view of the appellant the driver of the automobile had ample opportunity to see the dangerous situation long before the accident occurred and by the exercise of reasonable care and caution under all of the circumstances therein obtaining, particularly including the presence of small children in the area, could have avoided striking the little boy.
While on the surface the position of the appellant might appear to have merit, it should be noted that the instructions to which he offers objection were cautiously framed on the condition that the driver of the automobile would have to be without negligence on her own part. It is clear from this record that the trial judge adopted the view that under all of the evidence the question of negligence, contributory negligence, and the related issues as to whether the driver of the automobile exercised due care appropriate to the particular circumstances, should be submitted to the jury as involving a factual conflict which could not otherwise be resolved as a matter of law.
It should further be noted that at the request of the appellant, the trial judge had carefully instructed the jury on the unpredictable nature of small children and the fact that their movements are erratic and that they cannot be relied upon to exercise the degree of care for their own safety in the manner to be demanded of adults. The trial judge appropriately instructed the jury as to the responsibility of the driver of motor vehicles in regard to anticipating these unpredictable movements of young children and, by his instructions, he imposed upon the motorist the duty to keep *590 a vigilant lookout where such motorist observes children of tender years playing along the side of the road. He told them it was a matter of common knowledge that oftentimes children under these circumstances strayed upon the road and that the motorist was required to govern himself accordingly.
Finally, at the request of appellant, the jury was instructed on the matter of the applicability of the doctrine of the last clear chance as related to the alleged negligence of the automobile driver, Mrs. Breslin.
It appears to this Court that the trial judge very completely and properly advised the jury as to the law applicable under all of the circumstances and then with propriety deposited with the jury the problem of resolving the factual conflicts in the light of the law as pronounced by the Court.
By assignment of errors numbered 1 and 2, the appellant-father complains that the trial judge should have directed a verdict for the appellant as plaintiff in the court below on the question of the alleged negligence of the appellees-defendants. It is a recognized proposition that the question of whether a verdict should be directed or a new trial be granted in cases such as the one at bar rest substantially in the sound judicial discretion of the trial judge. It is apparent from the evidence revealed by this record that reasonable men might well have differed on the question of the existence or non-existence of negligence on the part of defendants. There were conflicts in the testimony and it was perfectly obvious that varied inferences could be drawn from the facts revealed by the record. In view of this situation it was proper to submit the matter to the jury for its decision.
We next reach a more difficult aspect of the case in the contention of the appellant-father that the trial judge committed error by instructing the jury at the request of the appellees to the effect that if the mother of the deceased child was guilty of negligence that proximately contributed to causing the accident and injury, they should return a verdict of not guilty for the defendant. He informed the jury that it appeared from the testimony that the child was in the custody of its mother with the knowledge and consent of the father who was the plaintiff and that the failure of the mother to observe reasonable care or to exercise reasonable care, control and supervision of the child would be applicable to both parents and would bar recovery by the father.
By this appeal the father contends that he should not be held accountable for the negligence of the mother, if any existed, even though under the statute upon which he bases his cause of action he is permitted to claim damages for the loss of the child's services and for the mental pain and suffering experienced not only by himself but also by his wife, the child's mother.
The testimony is without conflict that the plaintiff, his wife and their two small children enjoyed a normal happy family relationship. They all were devoted to one another. The father was the bread-winner, and the mother took care of the homeplace. The father admitted that in his absence "she was in charge". He admitted that he knew that for three or four months prior to the tragic accident the little boy had been permitted to play with the small children in the unprotected area of the front yard of his home, which was immediately contiguous to the paved road, and this despite the fact that he himself had provided a fenced-in area to the rear of the house as a playing area for his children.
We do not intend that this summary of the evidence should be construed as the expression of any view by this Court that there was negligence on the part of either of the parents as a matter of law. We mention these facts from the record, however, in order to present a picture of the situation as it appeared in the lower court and as it might have been considered by the jury in arriving at their verdict.
Nonetheless the appellant-father contends for reversal on the proposition that *591 the right of action given by the statute is personal to him and that he should not be bound by the alleged contributory negligence of his wife inasmuch as he was not present at the time of the accident and had no direct part whatsoever in the whole unfortunate situation.
So far as we have been able to determine this is the first time this particular question has been squarely presented to this Court for decision. Despite the fact that the statute under which the action was brought was initially passed in 1899 and has been considered on numerous occasions by this Court, we find no case in which the specific point has been raised. We, therefore, consider it appropriate to review briefly a number of cases which might be helpful in arriving at a conclusion.
The complaint was filed pursuant to the provisions of Section 768.03, Florida Statutes, F.S.A.:
"Whenever the death of any minor child shall be caused by the wrongful act, negligence, carelessness or default of any individual, or by the wrongful act, negligence, carelessness or default of any private association or persons, or by the wrongful act, negligence, carelessness or default of any officer, agent or employee of any private association of persons, acting in his capacity as such officer, agent or employee, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, negligence, carelessness or default of any officer or agent, or employee of any corporation acting in his capacity as such officer, agent or employee, the father of such minor child, or if the father be not living, the mother may maintain an action against such individual, private association of persons, or corporation, and may recover, not only for the loss of services of such minor child, but in addition thereto, such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess." (Emphasis added.)
So far as we have been able to determine this statute is peculiar to Florida, and we find no exact counterpart in any other state. The resourcefulness of able counsel who briefed this case on appeal apparently has failed to produce an identical statute in any other part of the country because they have referred us to none. The peculiarity of the Florida act is that it creates a right to a cause of action which, first, may be exercised by the father of a minor, and if the father be not living, then next the mother may maintain the action and further specifies the items of damages to be recovered in the form of compensation for the loss of services of the minor and in addition thereto "such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess". See Annotation, 14 A.L.R. 2d 488, 497.
As applied in Florida over the years this act has been construed to mean that in cases where a husband and wife are living together in a normal family relationship such as in the case at bar and a minor child is killed by the wrongful act of another, then the father brings the action and recovers not only for his own mental pain and suffering but also for that of the mother. It should be noted that the recovery is for such sum as the jury may assess and that the amount of the recovery is indivisible; that is to say, there is no apportionment between the parents. The father alone is, in an appropriate case, permitted to recover one sum which serves as compensation for his own suffering and also for the suffering of his wife. In the case at bar the jury was so instructed at the request of the appellant.
There was abundant testimony on the subject of the pain and anguish experienced by the mother of the deceased child. The parties disposed of the house which they owned and occupied in an effort to remove the mother from the scene of the tragedy and the day to day reminders of the unhappy event. Psychological reactions of the mother according to the record were so severe and intense that the family physician advised her to have another baby *592 as soon as possible in an effort to transplant the love and affection which she undoubtedly had for the deceased child to a new life which she would bring into the world. This she did, the new baby being about a year old when she testified at the trial. It is perfectly obvious, therefore, that the pain and anguish of this mother were portrayed to the jury as a substantial element of the damages sought by the appellant-father.
In analyzing the statute, the cases which have construed the statute, and, as well, the basic justice of the situation, it appears to us altogether appropriate that in such cases as the one at bar the father in seeking damages should be held accountable for the negligence of the mother, if any existed.
We now examine some of the cases since the enactment of the act in question. It is well known that at common law the cause of action died with the person and that a parent had no right of action as parent for the wrongful death of a minor child. We point out that this is not a "survival of action" statute. The statute creates a new cause of action, one unknown to the common law, which arises out of the death of the child and gives full recognition to the basic relationship between parent and child. Although the Florida act is in derogation of the common law and because of this ordinarily would be strictly construed, nevertheless we have held that it is remedial in nature and should be accorded a liberal construction consistent with the objective sought to be accomplished. Nolan v. Moore, 81 Fla. 594, 88 So. 601.
It has been held that the statute contemplates an action by the parent in his personal capacity to redress a personal wrong and that the damages, if any, are personal to the parent in his own right as such. Seaboard Air Line Ry. v. Moseley, 60 Fla. 186, 53 So. 718; Pensacola Electric Co. v. Soderlind, 60 Fla. 164, 53 So. 722.
In the case of Florida East Coast R. Co. v. Hayes, 66 Fla. 589, 64 So. 274, 275, an attack was leveled at the constitutionality of the act in question on the ground that it illegally authorized the father to recover for the mental pain and suffering of the mother who under the act was not necessarily a party to the cause. After holding that this statute had not been shown to be unconstitutional beyond all reasonable doubt, it was further decided that:
"* * * It is competent for the Legislature to modify the rules of the common law, and to give the mother such a right of recovery; and, by empowering the father to recover for the mental pain and suffering of the mother in an action authorized to be brought by him alone for the wrongful death of their minor child, the statute does not deny to the defendant any right or opportunity to interpose any defense applicable to the demand; nor is the statute wholly arbitrary and unreasonable in authorizing the father to recover damages for the mother in this class of action, not allowed at common law." (Emphasis added.)
It should be noted particularly that in the case last cited this Court held that even though the father is empowered to recover for the mental pain and suffering of the mother, nevertheless the statute "does not deny to the defendant any right or opportunity to interpose any defense applicable to the demand". Otherwise stated, the rule announced is that the statute permits a defendant to interpose any defense applicable to this demand. With this interpretation the constitutionality of the act was sustained.
The rule announced in Florida East Coast R. Co. v. Hayes, supra, with reference to the applicability of defenses appropriate to the demand was re-affirmed in Miami Dairy Farms, Inc., v. Tinsley, 121 Fla. 774, 164 So. 528. Although there have been numerous cases deciding various phases of the cause of action authorized by this statute we have been referred to none at all that changes the proposition of *593 law announced in 1914 in Florida East Coast R. Co. v. Hayes, supra. As a matter of fact, by logical inference other decisions appear to sustain the ruling.
In the case of Coon v. Atlantic Coast Line R. Co., 125 Fla. 490, 171 So. 207, this Court held that the damages aspect of the statute should be sustained on the theory that where the father who was maintaining suit is living with the mother he owes certain obligations to the mother and similarly the mother and wife owes certain obligations to the husband and father which are impaired by mental pain and suffering inflicted upon the wife while the relationship of husband and wife exists and for this reason the law recognizes and provides compensation to the husband for loss or injury resulting to him by reason of the mother's mental pain and anguish.
In Tampa Electric Co. v. Knowles, 91 Fla. 1032, 109 So. 219, this Court specifically held that the amount of the verdict in favor of a father in an action for the wrongful death of a minor child should be reduced under the comparative negligence rule because it was clear that the contributory negligence of the parents was proved as alleged. It should be noted that the alleged contributory negligence of both parents was considered by the Court in reducing the amount of the verdict. At least to this extent we have heretofore recognized the adverse effect of the contributory negligence of the mother in a case brought by the father under this statute.
In Winner v. Sharp, Fla. 1950, 43 So.2d 634, we recognized the contributory negligence of a custodian of a minor child as constituting a defense to an action by the father for the wrongful death of a minor. In mentioning this case we are not intending to hold that the mother occupies the position of a third party custodian who might have charge of the child with the consent of the parents for a particular time, although so far as the father is concerned in the normal family relationship it cannot be denied that in his absence and oftentimes in his presence, he recognizes the peculiar qualities of the mother to care for and supervise the conduct of an infant and to that extent he endows her with all of the authority that he himself might enjoy and otherwise assert in the matter of supervising the child and its conduct. Such appears to have been the situation in the case at bar.
We, therefore, conclude that where a father institutes an action for the wrongful death of a minor child it is proper, if the facts so justify, as in the case before us, to assert against the father the defense of contributory negligence grounded upon the negligent acts or failure to act of the wife and mother of which the father has knowledge or should have had knowledge. Where the evidence conflicts on this issue or different conclusions can be drawn from the facts by reasonable men, it is appropriate to submit the question to a jury for its decision under proper instructions by the judge. This was done in the case at bar, and we find no error in this regard.
The entire record including the briefs of able counsel have been carefully examined. This cause is permeated with tragedy and heartaches which attract the sympathetic understanding of the Court. We cannot, however, permit the pathos of the situation to lead us astray of the law that appears to be applicable. Finding no error, the judgment of the lower Court is, therefore,
Affirmed.
THOMAS, HOBSON and SEBRING, JJ., concur.
TERRELL, J., agrees to the judgment.
DREW, C.J., and ROBERTS, J., dissent.
DREW, Chief Justice (dissenting).
I am unable to agree with the opinion of Mr. Justice Thornal for two major reasons.
*594 I think the instruction of the lower court with reference to an unavoidable accident under the facts in this case was clearly erroneous. Briefly and succinctly I am of the view that the negligence of the driver of the car created the situation which resulted in the death of the child and that the doctrine of sudden emergency is wholly inapplicable. What was said in the case of Seitner v. Clevenger, Fla. 1953, 68 So.2d 396, 397, viz.: "To recognize the right of a defendant to escape liability under such circumstances would be to reward one for his own negligence", is clearly applicable here.
The principal and basic reason, however, that I cannot agree with the opinion and judgment prepared by Mr. Justice Thornal is that it runs counter to the holdings of numerous cases of this Court that the doctrine of imputed negligence does not obtain in this State.
The statute authorizes the husband to maintain an action for wrongful death of his minor child and to recover not only for the loss of the services of such minor child but in addition thereto such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess. One of the instructions in this case was to the effect that if the wife was contributorily negligent, the husband could not recover. I think that this instruction was clearly erroneous. The great weight of authority in this country is to the effect that in an action for wrongful death of a child, the negligence of one parent will not bar the right of recovery of the other parent. In a few jurisdictions which hold otherwise, such holdings are founded for the most part upon the premise that such courts have previously recognized the rule of imputed negligence or upon the premise that because of established community property laws the wife is deemed to act for the husband and must benefit by his recovery were such allowed.
The doctrine of imputed negligence is not recognized in Florida. Thus it has been held: "The mere relationship of husband and wife does not constitute a sufficient basis upon which to impute to the wife the negligence of the husband." Bessett v. Hackett, Fla. 1953, 66 So.2d 694, 698. Contributory negligence by the husband should not be imputed to the wife and "this holding is in line with the great weight of authority." (Italics added) Seaboard Air Line R. v. Watson, 94 Fla. 571, 113 So. 716, 719; De Salvo v. Curry, 160 Fla. 7, 33 So.2d 215. Likewise, negligence of a driver is not imputed to passenger of a car. Porter v. Jacksonville Electric Co., 64 Fla. 409, 60 So. 188. Further, in this state, the negligence of a parent cannot be imputed to a child in his tort action for damages. Jacksonville Electric Co. v. Adams, 50 Fla. 429, 39 So. 183, 7 Ann.Cas. 241. (Stating that the rule is in accord with "the weight of reason and authority." (Italics added) Meeks v. Johnston, 85 Fla. 248, 95 So. 670; Tampa Electric Co. v. Bazemore, 85 Fla. 164, 96 So. 297; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 So. 318; Burdine's Inc., v. McConnell, 146 Fla. 512, 1 So.2d 462. A minority view followed in some other jurisdictions is that negligence of a parent is imputed to a child. See 15 A.L.R. 414, 423.
It is generally accepted that negligence of one spouse will not bar the other's right of recovery for death of a child. In Note, 1923, 23 A.L.R. 670, 691, it is stated: "In accord with the above rule that the contributory negligence of a parent will defeat recovery for death of a child, in an action by the administrator, only to the extent of such parent's interest, is the rule which is supported by the majority of the cases on facts within the scope of the present annotation, that the contributory negligence of one parent will not be imputed to the other so as to bar recovery, merely on that ground, for death of a child, by or for the benefit of the latter." (Italics added)
The following jurisdictions, among others, have held that in a wrongful death action the negligence of one parent will not bar recovery by the other parent: Atlanta & C. Air-Line Ry. Co. v. Gravitt, 93 Ga. 369, 20 S.E. 550, 26 L.R.A. 553, 44 Am.St.Rep. 145 (a leading case discussing *595 the question at length); Lindley v. Sink, 218 Ind. 1, 30 N.E.2d 456, 2 A.L.R.2d 772; Reynolds v. Thompson, Mo. 1948, 215 S.W.2d 452; Los Angeles & S.L.R. Co. v. Umbaugh, 61 Nev. 214, 123 P.2d 224 (discussing the rule at length); Macdonald v. O'Reilly, 45 Or. 589, 78 P. 753 (discussing the rule at length and stating decisions contra "are all" from states where doctrine of imputed negligence existed); Pearson v. National Manufacture & Storage Corp., 219 N.C. 717, 14 S.E.2d 811; Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W.2d 700; Horne v. Atlantic Coast Line R. Co., 177 S.C. 461, 181 S.E. 642 (discussing the authorities at length); City of Danville v. Howard, 156 Va. 32, 157 S.E. 733, 735, (observing that a decision of Pennsylvania holding otherwise "is based upon the doctrine that, because of the marital relation between husband and wife, the negligence of one is imputable to the other, but such is not the law in this state." [Italics added]).
As previously commented on, there are cases holding to the contrary as where because a community property rule prevails it is held that the wife acts for the husband and must benefit by recovery. Crevelli v. Chicago, M. & St. P.R. Co., 98 Wash. 42, 167 P. 66, L.R.A. 1918A, 206; Dull v. Atchison, T. & S.F.R. Co., 27 Cal. App.2d 473, 81 P.2d 158; or where the jurisdiction adheres to the imputed negligence rule, Nichols v. Nashville Housing Authority, 187 Tenn. 683, 216 S.W.2d 694; Darbrinsky v. Pennsylvania Co., 248 Pa. 503, 94 A. 269, L.R.A. 1915E, 781 (holding that because of the marital relation the negligence of one spouse is imputed to another). The result of these cases is a distinct minority view with the trend the other way. See note, 1948, 2 A.L.R.2d 785, 805, where it is stated:
"Attention is called also to the fact that by the great weight of modern authority the negligence of one spouse is not to be imputed to the other unless he or she is the agent of the other in the matter at hand, or they are jointly engaged in the prosecution of a common enterprise. See 38 Am.Jur. 925, 926, Negligence, Sec. 239. From this it follows that in an action against a third person for the death of a child the contributory negligence of one of the parents will not be imputable to the other, so as to preclude recovery by or on behalf of the parent who is not negligent merely because of their relationship as husband and wife, and absent any partnership, joint undertaking, or community of interest."
In the instant case the cause of action is by the father for his own statutory damages granted him by Section 768.03, F.S. 1951, F.S.A., and is not brought under the separate statutory action provided in Section 768.02 where he may also have an action as administrator. It has been held that the two causes of action are separate and distinct and a judgment for defendant in one does not bar a suit for the other. Coon v. Atlantic Coast Line R. Co., 125 Fla. 240, 490, 171 So. 207. Under the instant cause of action the father, and only the father, is entitled to recovery for the loss of services of the deceased infant and for his own mental pain and suffering, under the holding of this Court in Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812. The father also, in appropriate circumstances, is entitled to recovery for pain and suffering of the wife but, for example, he is not entitled to such recovery where the relationship of husband and wife has ceased to exist by reason of divorce. Fuller v. Darnell, 100 Fla. 778, 129 So. 915, 916, 74 A.L.R. 1. In the last cited case this Court recognized that in an action of the sort in the main case "`the father does not represent the mother in maintaining the action.'" Clearly the father is entitled to damages in his own right separate and apart from any damages to the wife. Therefore, any contributory negligence of the wife should serve only as a bar to recovery for the pain and suffering of the wife. Any holding that negligence of the wife bars all of the husband's right of action is simply one imputing her negligence to him contrary to principles long settled in this state.
*596 The opinion of Mr. Justice Thornal correctly states that if there is a claim by the husband for loss because of the wife's pain and suffering "any defense that would eliminate this substantial element of damage, such as, contributory negligence by the mother and wife, should likewise be permitted." (Italics added) But, the opinion goes much farther and finally holds that the entire cause of action is eliminated because of the negligence of the wife without giving any authority to support such result. In Tampa Electric Co. v. Knowles, cited in the main opinion, the Court did hold that "contributory negligence of the parents appears as averred" and that the damages should be reduced accordingly. This holding is not, in my judgment, authority for the proposition that the contributory negligence of one parent will bar recovery of the other. In Winner v. Sharp, cited in the main opinion, this Court affirmed a judgment for plaintiff husband in a suit brought by him for the death of his child. The defendant pleaded contributory negligence on the part of the child's custodian. Instead of imputing that negligence to the plaintiff, the court did the contrary. In any event this case did not hold that the negligence of one parent can be imputed to another simply by reason of the marital relationship. Yet, the main opinion has reached that result.
I readily agree that when the father asserts a claim for pain and suffering of the mother, it is proper to assert in defense the mother's negligence. But, it does not follow that the defense of the mother's negligence should go to the entire claim of the husband. Instead, at the most, the defense should be allowed to be asserted only to that portion of the claim by the husband which is for the pain and suffering of the mother. It may be asserted that the demand is indivisible. I cannot agree. The Court could and should have eliminated the defense by its instructions only to the extent it was not applicable. Thus the court could and should have instructed the jury that if the mother was contributorily negligent, the father could not recover for her pain and suffering. Even if this Court were to hold that the demand for loss of services ran to both the father and the mother, there was still a claim for pain and suffering of the father in which the wife had no right and it should not have been cut off by her negligence as well as the father's right to recover for loss of services.
Moreover, in the instant case, the defendants never did plead as a defense the negligence of the wife. Thus by giving their requested instructions the defendants were permitted a defense not in the pleadings. Even if defendants were not bound by the issues made by the pleadings, in no event should the plaintiff be penalized for the incorrectness in defendants' requested instruction which failed to set forth the extent of plaintiff's claim which should be cut off by any contributory negligence of the wife. According to the record, the instruction given by the court to the effect that negligence of the wife required a verdict for the defendants was requested by defendants. On this requested instruction defendants cited four authorities. None of these had anything to do with imputed negligence. The authorities there referred to involved a situation where only the plaintiff himself was negligent. And no authority is now presented by defendants to this Court. In discussing this question in their brief, the defendants, appellees, have never considered the real issue of whether the wife's negligence could be imputed to the husband. The brief refers only to the negligence of both parents or of the plaintiff father. In this connection, it is also noted that the challenged instruction requested by defendants was worded as though both the husband and the wife were parties to the suit. Thus the Court said, "It is not your duty to determine which of the parties, that is, the plaintiff and his wife or the driver of the defendant's car was more negligent, * * * if you find from the evidence, * * * that Mrs. Klepper was guilty of negligence that proximately contributed to causing the accident and injury, then you should return a verdict of not guilty for the defendant" even though you find Mrs. Breslin was negligent in *597 some manner that contributed to the accident. (Italics added) This was clear and prejudicial error.
I think the judgment should be reversed and the cause remanded for a new trial.
ROBERTS, J., concurs.